ELIZABETH DRUMWRIGHT v. NORTH CAROLINA THEATRES, INC.

(Filed 10 December. 1947.)

1. Negligence § 4f (2)—

   While the proprietor of a moving picture theatre is not an insurer of the safety of patrons, he is under duty to exercise ordinary care to keep the premises in a reasonably safe condition and to give warning of hidden perils or unsafe conditions in so far as they can be ascertained by reasonable inspection and supervision.

2. Same—

The need for sufficient lights to enable patrons to find or leave their seats during the exhibition of a picture, and the need for sufficient darkness to exhibit the picture without eyestrain on those observing it, are factors to be considered in determining ·the correlative obligations and rights of the theatre proprietor on the one hand and its patrons on the other.

3. Same—

Plaintiff's evidence tended to show that she was a patron of a moving picture theatre and was directed by an usher to the balcony of the theatre which was in semi-darkness, that she was unfamiliar with that part of the theatre, .that there were no floor lights or seat lights burning in the aisle or on the steps as plaintiff was accustomed to see in darkened theatres, that no usher was on duty in the balcony, that the steps in the aisle were alternately long and short, and that plaintiff overstepped one of the short steps and fell to her injury. Held: Defendant's motion to nonsuit should have been overruled.

4. Negligence § 11—

Unless obviously dangerous, the conduct of plaintiff which otherwise might be pronounced contributory negligence as a matter of law, would be deprived of its character as such if done at the direction of the defendant or its agent.

SCHENCK, J., took no part in the consideration or decision of this case.

WINBORNE, J., dissents.

BARNHILL, J., dissenting.

APPEAL by plaintiff from Harris, J., at February Civil Term, 1947, of WAKE.

Civil action to recover damages for personal injuries alleged to have been caused by the wrongful act, neglect or default of the defendant.

On the afternoon of 24 April, 1946, the plaintiff, a student at Meredith College, in company with two fellow students, attended the matinee screen show at the Ambassador Theatre in Raleigh. This theatre is owned and operated by the defendant.

After purchasing their tickets and upon entering the theatre, they were informed by an usher that no seats were available on the first floor and were directed by him to go to the balcony for seats. The plaintiff had never been in this part of the theatre before.

When the plaintiff and her companions reached the landing or platform back of the seats in the balcony, they stood for a moment to accustom their eyes to·the darkened condition of the room. The picture was then being shown. There were no floor lights or seat lights in the aisle or on the steps, and no usher was on duty in the balcony. They saw three vacant seats about midway or five or six rows down from where

they were standing, and proceeded in single file along the aisle to take them. The plaintiff was last, her two companions going ahead of her. The steps going down from the platform were uneven in width—the succession being a narrow step then a wider step (which is the landing for that particular row of seats) followed by another narrow step and then a wider step, and so on.

Although the plaintiff was holding to the ends of the seats as she proceeded down the aisle, she slipped or stumbled and fell and was injured. Plaintiff says: "I thought I was on one of the big steps and started to turn and there was another small step and I slipped and fell. . . . There were no lights at all as I saw on the steps, nothing to give you any idea where you were going; no light to show the steps at all. . . . I was looking down where I was going at the time I fell. . . . I had overstepped that small step is what caused me to fall. . . . I knew the darkened condition of the theatre was for the purpose of carrying on the show. But all the movies I have been to had lights on the steps."

Due to the swollen condition of plaintiff's foot, she consulted a physician on the following day, and the X-ray showed a crack or incomplete fracture in the heel bone. The physician said that in his opinion no permanent disability would result from the injury although it might pain her for sometime.

From judgment of nonsuit entered at the close of plaintiff's evidence, she appeals, assigning error.

*Thomas W. Ruffin for plaintiff, appellant.*
*Ehringhaus & Ehringhaus for defendant, appellee.*

STACY, C. J. The question for decision is whether the evidence suffices to carry the case to the jury in the face of a demurrer. The trial court answered in the negative. We are inclined to a different view.

The proprietor or operator of a theatre who invites or induces patrons to enter therein is in duty bound to exercise ordinary care to keep the premises in a reasonably safe condition and "to give warning of hidden perils or unsafe conditions in so far as can be ascertained by reasonable inspection and supervision." *Ross v. Drug Store,* 225 N. C., 226, 34 S. E. (2d), 64; *Watkins v. Taylor Furnishing Co.,* 224 N. C., 674, 31 S. E. (2d), 917; *Benton v. Building Co.,* 223 N. C., 809, 28 S. E. (2d), 491; *Mulford v. Hotel Co.,* 213 N. C., 603, 197 S. E., 169; *Bowden v. Kress,* 198 N. C., 559, 152 S. E., 625; 52 Am. Jur., 295. True, the proprietor or operator is not an insurer of the safety of such patrons, or invitees, while on the premises. *Leavister v. Piano Co.,* 185 N. C., 152, 116 S. E., 405; *Bohannon v. Stores Co.,* 197 N. C., 755, 150 S. E., 356.

In the instant case, however, we are dealing only with alleged tortious conduct and not with suretyship or insurance.

Many fine distinctions are to be found in the cases respecting the relative rights and duties of managers and patrons of motion-picture theatres, but in the end it all comes to a question of due care or commensurate care under the circumstances. The need for sufficient light to enable patrons to find or to leave their seats during the exhibition of a picture, and the need for sufficient darkness to exhibit it without eyestrain to those observing it, are factors to be considered in determining the correlative obligations and rights of the parties. Obviously what would be due care in a lighted room might not be commensurate care in a darkened theatre.

Here, the conjunction of the following facts would seem to call for the intervention of a jury: The plaintiff and her companions were directed by an usher on the first floor to go to the balcony for seats. They were unfamiliar with that part of the theatre. The picture was then being exhibited, and the balcony was in semidarkness. The steps in the aisle leading from the rear platform to the front of the balcony were uneven in width. There were no floor lights or seat lights in the aisle or on the steps. At least none were lighted. Plaintiff was accustomed to seeing such lights in darkened theatres. No usher was on duty in the balcony. Under these circumstances, the plaintiff overstepped one of the small steps in the aisle, stumbled and fell and was injured.

In a case arising out of a closely similar fact situation, the Appellate Division of the Supreme Court of New York reversed a judgment for the defendant and ordered the case submitted to a jury, the court holding that the plaintiff was not contributorily negligent as a matter of law in the light of the usher's direction that she proceed to the balcony for a seat, *Rabinowitz v. Evergreen Amusement Corp.,* 244 N. Y. S., 43. See *Schwartz v. International Vaudeville Co.,* 269 N. Y. S., 642; Note 98 A. L. R., 578; 52 Am. Jur., 300. We are constrained to follow a like course in the case at bar. 52 Am. Jur., 296; Anno. 143 A. L. R., 71.

Unless obviously dangerous, the conduct of a plaintiff which otherwise might be pronounced contributory negligence as a matter of law would be deprived of its character as such, if done at the direction of the defendant or its agent. *Johnson v. R. R.,* 130 N. C., 488, 41 S. E., 794; *Lambeth v. R. R.,* 66 N. C., 494. Here, the plaintiff and her companions were directed by defendant's agent to go to the balcony for seats. In following this direction, plaintiff was injured. The case is one for the jury.

Reversed.

SCHENCK, J., took no part in the consideration or decision of this case.

WINBORNE, J., dissents.

BARNHILL, J., dissenting: The Court is here writing new law for this jurisdiction. In so doing the conclusion reached is, in my opinion, in direct conflict with former decisions of this Court in which it has been held repeatedly that where a plaintiff voluntarily proceeds under conditions of darkness which make it impossible to see where he is going he must suffer the consequences of his own negligence in so doing. I am, therefore, compelled to set forth to some extent the reasons I cannot concur in the majority opinion.

The facts plaintiff's testimony tends to prove are these: The plaintiff entered the theater of defendant as a paying guest or invitee. The usher in the orchestra told her there were no seats downstairs; to go to the balcony. She and her two companions went to the balcony and while standing on the landing platform selected the seats they wished to occupy five rows down. They then proceeded down the aisle to the seats so selected. The two companions reached their seats in safety and plaintiff reached the fourth tier or row of seats where she stumbled or slipped and fell. What caused her to fall she does not know. Whether she stumbled over something a patron had left in the aisle she cannot say. Evidently, she says, her foot slipped off the edge of the step and that was what caused her fall. The balcony was constructed in the customary manner. The seats were tiered in stairway fashion. The risers between each tier on which the seats were located were of the same height and the seat platforms were of the same width. The picture was being shown at that time, and the theater was in semidarkness as a necessary part of the showing, and there was no illumination from seat or aisle lights. Ample light was furnished between each showing of the picture for departing patrons to leave and incoming patrons to enter and find seats in safety.

When plaintiff reached the balcony she found no usher. She knew the aisle was dark and she could not see the steps, but had to feel her way down to the selected seats. But she was too impatient to await assistance or lights. Instead she proceeded on down the aisle, fully aware of the darkened condition of the theater.

Wherein lies the negligence of the defendant? What wrongful or negligent act did it commit which has any causal connection with plaintiff's injuries? What fact or circumstance tends to exculpate plaintiff in regard to her conduct in proceeding down the aisle, knowing she could not see where she was going or what danger lay ahead?

She, as she is required to do, has picked out those acts of defendant which she contends constitute want of due care. She alleges that defendant was negligent in that it (1) failed to "safely and properly light" the landing platform and "the steps descending to the seating arrangement in the balcony of said Theater at least to the extent that a paid patron and invitee . . . descending steps at the express invitation of the defendant

DRUMWRIGHT *v.* THEATRES, INC.

could at least see and not have to stumble along ·in .the dark," and (2) failed "to provide an usher with a dimmed flashlight to guide the plaintiff ·and her companions . . . and seat her and her companions safely, all of which ·is customary with all theater operators having due regard for the safety of their patrons."

There is no allegation of any unusual, defective, or negligent construction of the aisle steps or that the balcony was not constructed in the customary manner. She does not allege that theaters of the type here involved customarily provide lights on the aisle steps during the showing of a picture. The nearest approach to proof thereof is the .statement of the plaintiff : "All the movies I have been to had lights on the steps." When, where, or how many theaters she has attended is not disclosed. While she does allege that it is usual and customary to furnish ushers with dimmed flashlights to guide patrons seeking seats in the balcony section of the theater she does not offer any evidence to support the allegation.

While there are allegations of failure to light properly the approaches to the balcony, such allegations are immaterial here for the reason that she reached the balcony in safety. The condition of the light in the approaches through which she had passed in no wise contributed to her injuries. Hence *Mulford v. Hotel Co.,* 213 N. C., 603, and like cases have no application here.

So then she must necessarily rely upon her allegation of insufficient light and failure to furnish an usher as the basis of her contention that defendant breached a duty it owed her as a paying patron of the theater.

What a man of ordinary prudence, in operating a business or trade, would do under given circumstances is ordinarily to be found in the usage or custom of that particular business. Neither court nor jury is permitted to set a standard of prudence from case to case as occasion arises. The standard is set by what men engaged in the same business or trade actually do under similar circumstances. Here there is a total lack of proof that, in operating a theater, seat or aisle lights and ushers are customarily furnished for the guidance of balcony customers.

But to meet this situation the majority suggest that the "direction" to go to the balcony committed defendant to light the way not only to the balcony but also down the steps to her seat. In support of this position, *Johnson v. R. R.,* 130 N. C., 488, and kindred cases are cited. But those cases are not in point here. A passenger buys a ticket to a definite destination. It is the duty of the transportation company to stop at that point so that he may alight in safety. When instead of· stopping, the train merely slows down and the agent of the company directs the passenger to alight while the train is in motion, there is a definite and positive breach of duty and lack of due care. Even then when the jump-

ing or. alighting is obviously dangerous, the passenger is guilty of contributory negligence. See the Johnson and similar cases. Here the "direction" amounted to nothing more than information. The usher in effect said: "There are presently no available seats downstairs. If you go to the balcony you will find seats there." This was no direction to seek to descend the steps unassisted and find a seat in the dark. It was entirely optional with plaintiff whether she should go to the balcony or wait downstairs. Certainly it was optional with her whether she should await the lights or undertake to find her way down in the dark.

Then finally the majority rely on *Rabinowitz v. Evergreen Amusement Corp.*, 244 N. Y. S., 43, where a judgment of nonsuit was reversed, as presenting "a closely-similar fact situation." With this conclusion I cannot agree. There the step which caused the plaintiff in that case to fall was deeper than the others. The court held that in view of that fact the jury might find the failure to furnish a light to disclose this unusual situation was some evidence of negligence. This is sound, for it is well known that even in open daylight an irregular step of that type is likely to cause a person to lose his balance. But, in my opinion, with all deference to the majority, no such fact situation is disclosed here. See *Schwartz v. International Vaudeville Co.*, 269 N. Y. S., 642, where the *Rabinowitz case* is analyzed and distinguished. See also *Decker v. Brooklyn Strand Theatre Corp.*, 225 N. Y. S., 813, affirmed on appeal, 249 N. Y., 580.

The combination of facts detailed and relied on in the majority opinion is not, in my opinion, sufficient. The direction to go to the balcony was an invitation to use the passageway to the balcony. Had the plaintiff been injured while traversing this passageway and it appeared there was insufficient light therein, the situation would be different. But she reached the balcony in safety. The balcony was in semidarkness—a condition essential to a successful showing of the picture, a fact of which plaintiff was aware. There were no seat or aisle lights, a fact which plaintiff observed—and there is no sufficient evidence that such are customarily used in the balcony during a showing of the picture. *Falk v. Stanley Fabian Corp.*, 178 A., 740; *Rosston v. Sullivan*, 179 N. E., 173; Anno. 143 A. L. R., 68. The difference between the width of the treads or seat platforms and the step-downs is a necessary part of the construction of a balcony and there is no allegation of any defect or irregularity therein. While the plaintiff saw no usher in the balcony, there is no evidence tending to show that it was the duty of defendant to furnish ushers there. *Grand-Morgan Theatre Co. v. Kearney*, 40 F. (2d), 235; *Osborne v. Loew's Houston Co.*, 120 S. W. (2d), 947; Anno. 143 A. L. R., 71. So then, no one of the facts relied on, in and of itself, indicates or warrants an inference of negligence. Can we say that these facts, in

themselves innocent, in combination tend to prove negligence? I cannot so agree. *McKelvy v. Capitol Amusement Co.*, 159 So., 143; *Loew's Nashville & K Corp. v. Durrett*, 79 S. W. (2d), 598.

The plaintiff could see the seats she and her companions wished to occupy. Her companions found their seats in safety. She could have done likewise if she had not for some unknown cause slipped and fallen. She knew that in due time lights would be turned on, and yet, being unwilling to wait, she voluntarily elected to descend steps with which she was not acquainted when she could not see where she was going.

"Assuming that the plaintiff's way down the steps was dark, she was guilty of contributory negligence as a matter of law in proceeding down the steps, if it was so dark that she could not do so with safety." *Schwartz v. International Vaudeville Co.*, supra; *Hudson v. Kansas City Baseball Corp.*, 164 S. W. (2d), 318, 142 A. L. R., 858; *Columbia Amusement Co. v. Rye*, 155 S. W. (2d), 727; Anno. 143 A. L. R., 77.

She walked into a curtain of darkness, knowing that the floor was not level and that she would encounter step-downs she could not see. In so doing she was guilty of contributory negligence as a matter of law. *Dunnevant v. R. R.*, 167 N. C., 232, and cases cited. *Groome v. Statesville*, 207 N. C., 538; *Beaver v. China Grove*, 222 N. C., 234; *Walker v. Wilson*, 222 N. C., 66; *Sibbitt v. Transit Co.*, 220 N. C., 702; *McKinnon v. Motor Lines, ante*, 132; *Hardman v. Stanley Co. of Amer.*, 189 A., 886; Anno. 143 A. L. R., 77; *Johnson v. Mathews-Moran Amusement Co.*, 106 P. (2d), 703.

On this record the plaintiff has, in my opinion, failed to offer evidence sufficient to be submitted to a jury. I can find no cause therein for disturbing the judgment of the court below. I therefore vote to affirm.